# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATHAN GOLDSTEIN,<br><br>　　　Plaintiff,<br><br>　　　　　v.<br><br>LASTPASS US LP,<br><br>　　　Defendant. | CIVIL ACTION No. 1:23-CV-10320-PBS |
| DAVID ANDREW, individually and on behalf of all others similarly situated,<br><br>　　　Plaintiff<br><br>　　　　　v.<br><br>LASTPASS US LP AND GOTO TECHNOLOGIES USA, INC.,<br><br>　　　Defendants. | CIVIL ACTION No. 1:23-CV-10338-PBS |
| DEBT CLEANSE GROUP LEGAL SERVICES, LLC, individually and on behalf of all others similarly situated,<br><br>　　　Plaintiff,<br><br>　　　　　v.<br><br>GOTO TECHNOLOGIES USA, INC. and LASTPASS US LP,<br><br>　　　Defendants. | CIVIL ACTION No. 1:22-CV-12047-PBS |
| JOHN DOE, individually and on behalf of all others similarly situated,<br>　　　Plaintiff,<br>　　　　　v.<br>LASTPASS US LP,<br><br>　　　Defendant. | CIVIL ACTION No.: 1:23-CV-10004-PBS |

| | |
|---|---|
| STEVEN CARTER, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>                  v.<br><br>LASTPASS USA, LLC,<br><br>      Defendant. | CIVIL ACTION No. 1:23-CV-10092-DJC |
| R. ANDRE KLEIN, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>                  v.<br><br>LASTPASS US LP, and GOTO TECHNOLOGIES USA, INC.,<br><br>      Defendants. | CIVIL ACTION No. 1:23-CV-10122-PBS |
| ALAN MURPHY, JR., individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>                  v.<br><br>LASTPASS US LP, and GOTO TECHNOLOGIES USA, INC.,<br><br>      Defendants. | CIVIL ACTION No. 1:23-CV-10415-PBS |
| DENISE REMHOF, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>                  v.<br><br>LASTPASS US LP, and GOTO TECHNOLOGIES USA, INC.,<br><br>      Defendants. | CIVIL ACTION No.: 1:23-cv-10493-PBS |
| STEVEN LINTHICUM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>                  v.<br><br>LASTPASS US LP,<br><br>      Defendant. | CIVIL ACTION No.: 1:23-cv-10502 |

**PLAINTIFFS NATHAN GOLDSTEIN, DAVID ANDREW, AND STEVEN LINTHICUM'S MEMORANDUM OF LAW (1) IN SUPPORT OF MOTION TO CONSOLIDATE, (2) IN SUPPORT OF THEIR MOTION TO APPOINT THE "HABER GROUP" AS INTERIM CO-LEAD COUNSEL, AND (3) IN OPPOSITION TO MOTION OF PLAINTIFFS *DEBT CLEANSE GROUP LEGAL SERVICES, LLC, JOHN DOE*, AND *R. ANDREW KLEIN* TO APPOINT INTERIM CO-LEAD COUNSEL**

**TABLE OF CONTENTS**

I.   INTRODUCTION ....................................................................................................1

II.  CONSOLIDATION IS APPROPRIATE. .............................................................2

III. THE HABER GROUP IS BEST QUALIFIED TO LEAD THIS LITIGATION
     AND SHOULD BE APPOINTED INTERIM CO-LEAD COUNSEL. ...................2

     A.  The Haber Group's Work Done Identifying and Investigating the Claims. .............3

     B.  The Haber Group Has the Best Knowledge and Experience to Lead this
         Litigation. ....................................................................................................5

         1.  Edward F. Haber of Shapiro Haber ....................................................6

         2.  Amy Keller of DiCello Levitt ...........................................................9

         3.  James Pizzirusso of Hausfeld ..........................................................11

     C.  The Court Should Appoint a Small Executive Committee. ............................13

         1.  Amber L. Schubert of Schubert Jonckheer & Kolbe ..........................14

         2.  Sabita J. Soneji of Tycko & Zavereei .............................................15

     D.  The Haber Group Has the Resources to Prosecute This Case Effectively. ...........17

     E.  Other Factors, Including Diversity, Support the Appointment of the Haber
         Group. .........................................................................................................19

IV.  CONCLUSION ....................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Aspinall v. Philip Morris Companies, Inc.*,
  442 Mass. 381 (2004) ...................................................................................................6

*Breakwater Trading LLC v. JPMorgan Chase & Co.*,
  2020 U.S. Dist. LEXIS 188040 (S.D.N.Y. Oct. 9, 2020) ...................................5

*Carriuolo v. GM Co.*,
  823 F.3d 977 (11th Cir. 2016)......................................................................................8

*Davis v. Footbridge Eng'g Servs., LLC*,
  2011 U.S. Dist. LEXIS 93645 (D. Mass. Aug. 22, 2011) ...................................8

*Huang v. Spector*,
  142 S. Ct. 431 (2021)......................................................................................................9

*In re AVEO Pharm., Inc. Sec. Litig.*,
  2017 U.S. Dist. LEXIS 188560 (D. Mass. Nov. 14, 2017)..................................8

*In re Zetia Ezetimibe Antitrust Litig.*, 2020 U.S. Dist. LEXIS 183601 (E.D. Va. Aug. 13,
  2020).....................................................................................................................................5

*Jones v. Google LLC*,
  56 F.4th 735 (9th Cir. 2022) ........................................................................................8

*Lee v. Conagra Brands, Inc.*,
  958 F.3d 70 (1st Cir. 2020) ..........................................................................................7

*Levine v. Volvo Cars of N. Am., LLC*,
  2022 U.S. Dist. LEXIS 145525 (D.N.J. Aug. 12, 2022) ....................................7

*Magliacane v. City of Gardner*,
  483 Mass. 842 (2020) .....................................................................................................6

*Nowak v. Ford Motor Co.*,
  240 F.R.D. 355, 365 (E.D. Mich. 2006) ..................................................................4

*Olmeda v. AM Broadband, LLC*,
  C.A. 2006-30051 (D. Mass. Oct. 14, 2009) ...........................................................8

*Outten v. Wilmington Trust Corp.*,
  281 F.R.D. 193 (D. Del. 2012) ....................................................................................5

*Pulaski & Middleman v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015) ......................................................................................15

*Starr v. VSL Pharm., Inc.,*
   2020 U.S. Dist. LEXIS 242774 (D. Md. 2020) ................................................................7

*Swack v. Credit Suisse First Boston,*
   230 F.R.D. 250, 267 (D. Mass. 2005) ..........................................................................8

*Waste Mgmt. Holdings, Inc. v. Mowbray,*
   208 F.3d 288, 291 (1st Cir. 2000) ................................................................................6

*Watkins, et al. v. Spector, et al.,*
   No. 21-638, 2022 WL 89334 (U.S. Jan. 10, 2022) ......................................................9

*Xavier v. Evenflo Co. (In re Evenflo Co.),*
   54 F.4th 28 (1st Cir. 2022) ..........................................................................................7

## Other Authorities

James F. Humphreys Complex Litig. Ctr., George Wash. Law Sch., *Inclusivity and
   Excellence: Guidelines and Best Practices for Judges Appointing Lawyers to Leadership Positions in
   MDL and Class-Action Litigation* (Mar. 15, 2021) ....................................................19

## Rules

Fed. R. Civ. P. 23(g) ..............................................................................................................3

Federal Judicial Center, Manual for Complex Litigation (4th Ed. 2004) § 10.22 .....................13

Federal Judicial Center, Manual for Complex Litigation (4th Ed. 2004) § 10.221 ...................13

## Treatises

Bolch Judicial Institute, *Guidelines and Best Practices for Large and Mass-Tort MDLs* 33 (2d ed.
   2018) ..................................................................................................................3, 13, 17, 19

## I.   INTRODUCTION

Plaintiffs Nathan Goldstein, David Andrew, and Steven Linthicum in the above referenced *Goldstein v. LastPass US LP*, No. 1:23-CV-10320-PBS ("*Goldstein*"); *Andrew v. Last Pass US LP, et al.*, No. 1:23-CV-10338-PBS ("*Andrew*"); and *Linthicum v. LastPass US LP*, No. 1:23-CV-10502 ("*Linthicum*") actions agree that all the above listed related actions pending in this Court (and all related actions subsequently filed in or transferred into this Court) should be consolidated. Further, Plaintiffs Goldstein, Andrew, and Linthicum respectfully move this Court to appoint as interim Co-Lead Counsel: (1)  Edward F. Haber of Shapiro Haber & Urmy LLP ("Shapiro Haber") in Boston, Massachusetts (who will also act as liaison counsel); (2) Amy Keller of DiCello Levitt ("DiCello Levitt") in Chicago, Illinois; and (3) James Pizzirusso of Hausfeld LLP ("Hausfeld") in Washington, DC (collectively, "the Haber Group").

The Haber Group combines the experience, talents, and resources of one of the leading class action attorneys in Massachusetts with two of the most recognized and successful data breach attorneys in the United States. These three attorneys should be appointed interim co-lead counsel because of their extensive knowledge, experience, and recognition in class actions, and specifically data breach litigation, which will enable them to lead this complex case to fruition.

The Haber Group also proposes that the Court appoint a small Executive Committee ("EC"), which will assist Co-Lead Counsel by performing non-duplicative work consistent with their expertise and talents. The Haber Group proposes that the EC include: (1) Amber L. Schubert of Schubert Jonckheer & Kolbe LLP ("Schubert") in San Francisco, California and (2) Sabita J. Soneji of Tycko & Zavareei LLP ("Tycko") in Oakland, California. The proposed EC members also have extensive experience in consumer class actions and data breach litigation and would make valuable additions to the leadership team. Although the Haber Group believes it has all the required experience, knowledge,

and resources to handle the litigation, the Haber Group is amenable to other applicants being appointed to the EC, to the extent the Court believes that they can assist the leadership in this case.

The proposed leadership group here includes attorneys who independently investigated and filed three separate complaints, but who came together to create the best possible team of attorneys to represent the interests of all plaintiffs and class members. Collectively, this group and their partners have led dozens of data breach class actions, including the largest and most successful such cases to date, as well as hundreds of class actions in Massachusetts and elsewhere. They also reflect the diversity of the bar and the class. The Haber Group can readily manage this important litigation and work towards a just, speedy, and efficient resolution in a cooperative manner with all plaintiffs' counsel (whether they are part of the leadership structure or working supportively under our leadership), as well as defense counsel, as they have done in numerous other cases.

## II.    CONSOLIDATION IS APPROPRIATE.

Goldstein, Andrew, and Linthicum agree that all the above listed related actions pending in this Court (and all related actions subsequently filed in or transferred into this Court) should be consolidated. Goldstein, Andrew, and Linthicum oppose the interim co-lead counsel motion filed by counsel in the *Debt Cleanse Group Legal Services*, *John Doe*, and *R. Andre Klein* actions because, for the reasons detailed here, the appointment of the Haber Group as interim Co-Lead Counsel in this data breach litigation would be in the best interests of the class.

## III.    THE HABER GROUP IS BEST QUALIFIED TO LEAD THIS LITIGATION AND SHOULD BE APPOINTED INTERIM CO-LEAD COUNSEL.

Pursuant to Federal Rule of Civil Procedure 23(g)(1)(A), in determining an interim class leadership appointment, the Court "must consider (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." The Court

may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).   In appointing a class action leadership team, the Court should not only "ensure that the lawyers appointed to leadership positions are capable and experienced" but also "that they will responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds." Duke Guidelines (Best Practice 3C).[1] These factors all support the Haber Group's appointment as co-lead counsel in this case.

   **A.   The Haber Group's Work Done Identifying and Investigating the Claims.**

   The Haber Group's counsel independently conducted their own thorough investigations of the data breach that is the core focus of the Haber Group's Complaints. The Data Breach began in August of 2022, but LastPass did not disclose that it affected consumers until December 22, 2022. When LastPass admitted that it had suffered a data breach which may have implicated the personal, sensitive information of millions of consumers, along with backups of their password vaults (potentially allowing hackers access to millions of sensitive, vital accounts), attorneys in the Haber Group responded immediately by beginning an investigation. Counsel in the Haber Group enlisted technologists familiar with LastPass's business model and investigated the details of the initial data breach identified in August 2022, including the trickle of information from LastPass as it conducted its own internal investigation between August and December of 2022. The Haber Group also evaluated the new information LastPass released in December of 2022, in which it *admitted* for the first time that hackers had obtained cloud storage access keys and dual storage container decryption keys, copied information from backups that contained basic customer account information and related metadata (including company names, end-user names, billing addresses, email addresses, telephone numbers, and the IP addresses from which customers accessed LastPass). Most importantly,

---

[1] *See* Bolch Judicial Institute, *Guidelines and Best Practices for Large and Mass-Tort MDLs* 33 (2d ed. 2018) ("Duke Guidelines"). Although the Guidelines specifically address multi-district litigation, they are informative in a case such as this one.

LastPass's December 2022 statement finally acknowledged that this information had been extracted by hackers.

The Haber Group spoke with many LastPass subscribers, including the named Plaintiffs in their complaints, and learned what members of the class were doing in an attempt to protect themselves from the consequences of the Data Breach. For example, as specifically detailed in the *Andrew* complaint, in the months since LastPass's disclosure of the Data Breach, Plaintiff Andrew expended many hours attempting to remedy the harm, and prevent future harm, caused by the breach by changing roughly 500 passwords he had entrusted to Defendants. *Andrew* ECF No. 1 at 17-18. Mr. Andrew has still not completed mitigating the harm caused by LastPass's Data Breach. *Id.*

Moreover, the Haber Group employed the expertise of its attorneys experienced in data breaches, cybersecurity exploits, targeted phishing/scamming attacks, and dark web threat actors to determine other forms of potential harm that could stem from the Data Breach, including (as alleged in the *Goldstein* Complaint) rainbow table attacks and credential stuffing attacks. In other words, the Haber Group alleged that, even though LastPass maintains that the passwords contained within users' archived vaults may be encrypted, hackers may nevertheless be able to crack those vaults and obtain users' passwords through other compromised credentials available on the Internet. To incorporate this important, new information, counsel in the Haber Group held off from filing the *Goldstein* complaint until further details and information were released by LastPass, and as more and more companies and other entities announced subsequent attacks that stemmed from the Data Breach.

In waiting to file their respective complaints, counsel independently made the quality of their complaints a higher priority than the ability to claim "first to file" status.[2] As a result, the *Goldstein* complaint includes broader and more substantive allegations related to the breach than other

---

[2] "Whether someone was 'first to file' by itself has little to do with who is the best qualified to lead the case, and does not satisfy the requirements of Rule 23(g). To hold otherwise would further encourage a "rush to the courthouse" in ERISA class action cases." *Nowak v. Ford Motor Co.*, 240 F.R.D. 355, 365 (E.D. Mich. 2006).

complaints filed immediately after the announcement of the Data Breach. The *Goldstein* complaint also incorporates facts that did not come to light until after the initial cases were filed.[3] This careful approach to the litigation led to distinguished and nuanced pleading, including unique facts in support of their claims with a broad discussion of the impacts to the class.

### B.  The Haber Group Has the Best Knowledge and Experience to Lead this Litigation.

The Haber Group includes attorneys with proven management and leadership capabilities, excellent and diverse legal skills, and importantly, thorough knowledge of the subject matters and issues critical to this case. The Haber Group is comprised of attorneys who will work well together (important to a cohesive, effective team) but who are also willing to reach out to and incorporate others to utilize their talents where needed. Most importantly, the Haber Group's attorneys have unparalleled knowledge and expertise in prosecuting consumer privacy and data breach claims and deep expertise in Massachusetts law, which is crucial since LastPass's terms of service provide that Massachusetts law applies.[4] "Experience and knowledge of the law is of the utmost importance when determining lead counsel." *Outten v. Wilmington Trust Corp.*, 281 F.R.D. 193, 200 (D. Del. 2012).[5]

Further, and important to any case affecting a significant percentage of the U.S. population, the Haber Group enhances the credibility of the justice system because it is comprised of a truly representative and diverse group of counsel: younger attorneys along with more seasoned attorneys

---

[3] And just in the last few days, LastPass revealed that the threat actor here "pivoted from the first incident, which ended on August 12, 2022, but was actively engaged in a new series of reconnaissance, enumeration, and exfiltration activities aligned to the cloud storage environment spanning from August 12, 2022 to October 26, 2022." https://support.lastpass.com/help/incident-2-additional-details-of-the-attack The Haber Group plans to incorporate these new allegations into any consolidated complaint.

[4] *See* LastPass Contracting Party, Choice of Law, and Location for Resolving Disputes, https://www.lastpass.com/-/media/eaf917e588f94ac2a94bc2f9ef4f6037.pdf.

[5] *See also Breakwater Trading LLC v. JPMorgan Chase & Co.*, 2020 U.S. Dist. LEXIS 188040, at *18 (S.D.N.Y. Oct. 9, 2020) (recognizing the importance of lead counsel having "a successful track record in securing class certification and settlements in … similar … cases"); *In re Zetia Ezetimibe Antitrust Litig.*, No. MDL No. 2:18-md-2836, 2020 U.S. Dist. LEXIS 183601, at *94 (E.D. Va. Aug. 13, 2020) (recommending appointment of lead counsel who had "years of experience litigating similar cases across the country and extensive knowledge of the applicable law from that experience.")

with substantial trial experience; attorneys who have represented both defendants and plaintiffs; attorneys who are on the cutting edge of the cybersecurity field; attorneys who have deep knowledge and are thoroughly versed in Massachusetts law which will be applicable to all of the claims asserted in this action; and attorneys of various genders, ages, and racial backgrounds.

### 1.  Edward F. Haber of Shapiro Haber

Shapiro Haber & Urmy LLP ("Shapiro Haber"), led by its managing partner, and proposed co-lead counsel, Edward F. Haber, has long been a leader in the field of complex, high-stakes consumer class action litigation both in Massachusetts and throughout the country.

Shapiro Haber has been the preeminent leader in establishing the standards for litigating class actions in Massachusetts, including in:

- *Magliacane v. City of Gardner*, 483 Mass. 842 (2020), in which the Massachusetts Supreme Judicial Court established that a class action could be brought against Massachusetts towns and municipalities under the Massachusetts Torts Claim Act and that the statute does not require that each individual class member provide written notice of their claim;[6]

- *Aspinall v. Philip Morris Companies, Inc.*, 442 Mass. 381 (2004), in which the Massachusetts Supreme Judicial Court established standards for class certification under the Massachusetts Consumer Protection Act, G.L. c. 93A; and

- *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 291 (1st Cir. 2000), in which the First Circuit established its standard for accepting Fed. R. Civ. P. 23(f) petitions for interlocutory review of class certification decisions.

Shapiro Haber attorneys are among the few who have tried consumer class actions in Massachusetts to successful conclusion. In a long-running class action, which included two appeals to the Massachusetts Supreme Judicial Court, Shapiro Haber represented Massachusetts consumers against Philip Morris under the Massachusetts Consumer Protection Act, G.L. c. 93A. The case alleged that Philip Morris falsely represented to purchasers that Marlboro Lights cigarettes contained and delivered lower levels of tar and nicotine to human smokers than did regular cigarettes. After a five-

---

[6] The Class in *Magliacane* was recently certified.

week trial, the Court found that Philip Morris violated G.L. c. 93A, and awarded statutory damages and prejudgment interest totaling $15 million.

Shapiro Haber represents classes or putative classes in various complex consumer class actions. Examples of consumer class action cases litigated by Shapiro Haber include:

- *Xavier v. Evenflo Co. (In re Evenflo Co.)*, 54 F.4th 28 (1st Cir. 2022), where the First Circuit held that consumers who alleged that they overpaid for children's car seats because they relied on the manufacturer's misrepresentations about safety and testing plausibly demonstrated their standing to seek monetary relief because overpayment was a cognizable form of injury under U.S. Const. art. III, § 2, cl. 1.

- *Lee v. Conagra Brands, Inc.*, 958 F.3d 70 (1st Cir. 2020), where the First Circuit held that claims relating to "natural" advertising are not preempted by federal law and also clarified the applicable pleading standard for injury and damages under the Massachusetts consumer protection statute.

- In *Starr v. VSL Pharmaceuticals, Inc.*, No. 8:19-cv-02713-TDC (D. Md.), Shapiro Haber serves as co-lead counsel representing consumers in a number of states asserting violations of the federal RICO statute, various state consumer protection acts, and common law relating to the defendants' deceptive marketing and sale of the medical probiotic food VSL#3. Plaintiffs claim that the defendants, the owners and distributors of VSL#3, defrauded consumers into believing a new formulation of VSL#3 sold after May 2016 was the same as the original clinically tested formulation of VSL#3 sold prior to that time, when in reality it was not. The claims are on behalf of proposed nationwide and statewide classes of consumers who purchased VSL#3 from June 2016 to the present. Shapiro Haber successfully defeated defendants' motion to dismiss on December 28, 2020, including with respect to Plaintiffs' federal RICO claim, and the case has been vigorously litigated since that time. *Starr v. VSL Pharm., Inc.*, 2020 U.S. Dist. LEXIS 242774 (D. Md. 2020).

- In *Levine v. Volvo Cars of North America, LLC*, No. 2:18-cv-03760-CCC-JBC (D.N.J.), Shapiro Haber is the lead counsel representing a class of owners and lessees of certain model year Volvo XC90s, asserting claims against Volvo for consumer deception and breach of warranty relating to Volvo's deceptive marketing of its XC90 vehicles as being compatible with Android Auto. Shapiro Haber successfully defeated an attempt at the dismissal of the case on the pleadings, resulting in an important decision relating to the pleading standards for consumer deceptions claims, the requirements of substantive state consumer protection law, and defense strategies of "picking off" class representatives. *Levine v. Volvo Cars of N. Am., LLC*, 2022 U.S. Dist. LEXIS 145525 (D.N.J. Aug. 12, 2022).

- In *Jones v. Google, LLC*, No. 5:19-cv-07016-BLF (N.D. Cal.), Shapiro Haber represents a class of children, the personal information of whom Google, YouTube, and various YouTube content creators unlawfully collected and used for their own commercial purposes in violation of state law, when children accessed child-specific areas of YouTube. The case involves cutting-edge issues of online privacy and the online protection of minors from improper commercial exploitation. After the district court dismissed the case on preemption grounds, the plaintiffs successfully appealed the district court's decision to the

Ninth Circuit, resulting in an important decision regarding the preemption of consumer protection claims. *Jones v. Google LLC*, 56 F.4th 735 (9th Cir. 2022). That decision clarifies that state law may provide private remedies for the invasion of children's privacy, notwithstanding the existence of federal law that also addresses the same issues.[7]

- In *Carriuolo v. General Motors, LLC*, Case No. 14-cv-61429 (S.D. Fl.), Shapiro Haber represented a class of Florida purchasers and lessees of Cadillac CTS vehicles. The case concerned General Motors' misrepresentations that certain Cadillac CTS vehicles had obtained federal safety ratings that they had not in fact obtained. Shapiro Haber successfully moved for certification of a class of Florida purchasers of the vehicles, which was affirmed on an interlocutory appeal by the United States Court of Appeals for the Eleventh Circuit. *Carriuolo v. GM Co.*, 823 F.3d 977 (11th Cir. 2016). That landmark decision construed Florida law and Rule 23 to reject common defense arguments against class certification, paving the way for future consumer actions under Florida's consumer protection law.

Whether litigating a consumer class action through trial and appeal, or reaching a negotiated resolution, Shapiro Haber has achieved outstanding results. Shapiro Haber has recovered hundreds of millions of dollars in negotiated settlements. Judges in this District have routinely commended the excellent lawyering and considerable skill and experience of Shapiro Haber attorneys, and the reputation of the firm.[8]

As an attorney, Mr. Haber has fifty years of experience successfully litigating class actions and is one of the leading Plaintiffs' class action attorneys in Massachusetts. Mr. Haber graduated from Cornell University in 1966 and from Harvard Law School (*cum laude*) in 1969. Mr. Haber has an AV rating from Martindale-Hubbell and has been named a Massachusetts Super Lawyer every year since 2006. He has also been named to the national list of Super Lawyers in the Corporate Counsel Edition for securities litigation. Shapiro Haber's firm resume, which provides further detail about Mr. Haber and his partners and associates, as well as their successes, is attached as Ex. A.

---

[7] Defendants are currently seeking *en banc* review.

[8] *See, e.g., In re AVEO Pharm., Inc. Sec. Litig.*, 2017 U.S. Dist. LEXIS 188560, at *15 (D. Mass. Nov. 14, 2017) (Casper, J.); *Richard v. State St. Corp.*, C.A. 10-10184, ECF No. 43, at 2 (D. Mass. Nov. 20, 2014) (Memorandum and Decision and Order on Application for Attorneys' Fees) (Dein, M.J.); *Davis v. Footbridge Eng'g Servs., LLC*, 2011 U.S. Dist. LEXIS 93645, at *8 (D. Mass. Aug. 22, 2011) (Gertner, J.); *Olmeda v. AM Broadband, LLC*, C.A. 2006-30051 (D. Mass. Oct. 14, 2009) (Final Approval Hearing) (Neiman, M.J.); *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 267 (D. Mass. 2005) (Woodlock, J).

### 2. Amy Keller of DiCello Levitt

As a partner in the law firm of DiCello Levitt LLC, where she chairs the firm's Privacy, Cybersecurity, and Technology litigation practice, Ms. Keller primarily focuses her practice on data breach litigation and consumer protection. Recognized as "smart, tough, and practical with opposing counsel,"[9] and one of the "new faces leading MDLs,"[10] she has a significant amount of experience leading consumer and technology cases.

Ms. Keller began practicing law in 2008, dedicating her work to consumer protection issues. Since founding DiCello Levitt's technology practice group, she has been appointed to lead four separate data breach MDLs. In 2018, she was appointed by Chief Judge Thomas Thrash of the United States District Court for the Northern District of Georgia to serve as co-lead counsel in the Equifax MDL, where, as the youngest woman ever appointed to lead a nationwide class action, she helped secure the largest data breach settlement in history—resulting in as much as $505.5 million in cash relief and $1 billion in required security upgrades by the company. *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 17-md-02800, ECF No. 739-1 (N.D. Ga.).[11] In 2019, Ms. Keller was appointed co-lead counsel in two other data breach cases, *In re Marriott International, Inc. Customer Data Sec. Breach Litig.*, No. 19-md-02879-PWG (D. Md.), where she represents approximately 300 million consumers who did not receive the benefit of their bargain when making hotel reservations that their information would be kept secure, and *In re American Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No.

---

[9] Chris Bruce, *Rising Class-Action 'Superstar' Keller Takes Lead in Equifax Case*, Bloomberg BNA (Feb. 26, 2018), *available at* https://www.bna.com/rising-classaction-superstar- n57982089249.

[10] Amanda Bronstad, These are the new faces leading MDLs. And they aren't all men, Law.com (July 6, 2020), https://www.law.com/2020/07/06/there-are-new-faces-leading-mdls-and-they-arent-all-men/.

[11] *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020), *aff'd, rev'd on other grounds in part and remanded,* 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021), and *cert. denied sub nom. Watkins, et al. v. Spector, et al.*, No. 21-638, 2022 WL 89334 (U.S. Jan. 10, 2022).

19-md-02904 (MCA)(MAH) (D.N.J.), where she represented consumers whose private medical information was compromised by a company that entered Chapter 11 bankruptcy protection.

Most recently, Ms. Keller was appointed by Judge J. Michelle Childs of the United States District Court for the District of South Carolina to co-lead a data breach case against Blackbaud, a service provider and cloud-storage company for thousands of not-for-profit entities, schools, and hospitals across the country. *In re Blackbaud, Inc. Customer Data Security Breach Litig.*, No. 20-mn-02972 (D.S.C.). The team, which was formed with the goal of providing opportunities to MDL newcomers, women, and people of color, was heralded as the "most diverse leadership team ever."[12] Ms. Keller approaches her practice the same way—as a member of DiCello Levitt's Diversity, Equity, and Inclusion Committee, she works with her colleagues to recruit women and persons of color, and provide opportunities to law students from diverse backgrounds to clerk at her firm and gain paid experience working on class actions. Ms. Keller speaks and writes regularly about the importance of diversity[13] and ensures that work in her cases is distributed to colleagues in an equitable way so that those who have less MDL experience can be an active part of the litigation.

As a result of her and her team's hard work, her firm's technology practice group has been recognized as Practice Group of the Year by *Law360* an unprecedented three years in a row (in 2020, 2021, and 2022), and by the *National Law Journal* in 2020. Individually, Ms. Keller has been highlighted by Lawdragon in 2023 as one of its "500 Leading Plaintiff Consumer Lawyers" and as a 2023 "Litigation Star" in the Plaintiff Class Action section by Benchmark Litigation. Ms. Keller was elected to the American Law Institute in 2020, the leading independent organization in the United States

---

[12] Amanda Bronstad, MDL Judge Taps 'Most Diverse Leadership Team Ever' in Data Breach Class Action, Law.com (Mar. 3, 2021), https://www.law.com/nationallawjournal/2021/03/03/south-carolina-mdl-judge-taps-most-diverse- leadership-team-ever-in-data-breach-class-action/.

[13] *See, e.g.,* Why providing younger attorneys, women, and persons of color with advancement opportunities makes good business sense, Chicago Business Journal (Dec. 15, 2020) (attached as Exhibit B); Presentation, The Rise of Women to Leadership in Class Actions: a Look at the Cases Women are Leading and Defending with Congresswoman Katie Porter (D-CA) (Sept. 1, 2020).

producing scholarly work to clarify, modernize, and otherwise improve the law, and she was also selected that same year to the Steering Committee of the Sedona Conference's Working Group 11, focusing on issues of cybersecurity and privacy. Ms. Keller is Chambers-rated in general commercial litigation, and routinely provides testimony to state legislatures concerning proposed data breach legislation, most recently before Michigan's Senate on January 25, 2022, where her testimony convinced lawmakers to significantly revise proposed legislation before its passage. A copy of Ms. Keller's resume is attached as Ex. B.

### 3.  James Pizzirusso of Hausfeld

Mr. Pizzirusso is chair of Hausfeld's Data Breach and Consumer Protection practice groups, and a nationally renowned data breach and cybersecurity lawyer. Chambers and Partners ranks the leading lawyers and law firms across the world. In 2022, it ranked Mr. Pizzirusso (for the second year in a row) as one of only eleven attorneys in the country in "Privacy and Data Security: Litigation" (one of only two plaintiffs' attorneys to achieve this distinction).[14] Chambers described Mr. Pizzirusso as:

> [A] highly experienced litigator, noted for his successful track record acting for plaintiffs in high-stakes cybersecurity and privacy law class actions. "He is a thoughtful and strategic advocate who generates exceptional work product and results." "He is one of the leading plaintiffs' side class action litigators in the USA."[15]

Hausfeld is also the *only* Plaintiffs' firm in the country to receive a Band 1 ranking by Chambers in the category of Privacy & Data Security: Litigation, Nationwide. Law360 recognized Hausfeld as having a "2021 Practice Group of the Year" in Cybersecurity & Privacy.  Additionally, in 2021, Mr. Pizzirusso was personally named as one of Law360's "Cybersecurity & Privacy MVPs" (the only plaintiffs' attorney to receive that distinction). In 2020, the *National Law Journal* recognized Mr. Pizzirusso as a "Washington Trailblazer" for his role in data breach and privacy matters.[16] Similarly,

---

[14] Only one other plaintiffs' attorney has received this distinction: Mr. Pizzirusso's proposed Co-Lead counsel here, Amy Keller.
[15] https://chambers.com/lawyer/james-pizzirusso-usa-5:25411758
[16] https://images.law.com/media/nationallawjournal/supplements/NLJTB_DC_2020/mobile/index.html (at p. 137)

in 2017 the *National Law Journal* named him a "Cybersecurity Trailblazer," one of only two plaintiffs' lawyers in the country to achieve that distinction.[17] *SuperLawyers* has recognized Mr. Pizzirusso as a "Top Rated Class Action & Mass Torts Attorney" in Washington, DC since 2016 and *Lawdragon* has named him as one of 500 Leading Plaintiff Consumer Lawyers in the country since 2019.

In addition to public accolades, Mr. Pizzirusso has also worked across the bar with other cybersecurity lawyers representing defendants to advance the law on these issues. He currently sits on the Steering Committee of Sedona's Working Group 11 on Data Security and Privacy Liability, serving as a dialogue leader at WG11's annual meetings and having overseen two published Sedona papers. He has also spoken at dozens of conferences on these issues with defense counsel peers.

Given his vast familiarity with data breach class actions, numerous federal courts have appointed Mr. Pizzirusso to leadership positions in these types of cases, including in large MDLs, and he has successfully overseen and collaborated with hundreds of lawyers working under him. Most recently, in *In re T-Mobile Data Security Breach Litigation*, 4:21-md-03019-BCW (W.D. Mo.), one of the largest data breaches in history impacting approximately 75 million customers, Judge Wimes appointed Mr. Pizzirusso to serve as one of three co-lead counsel. There, he was able to help secure a record setting $500 million settlement on behalf of the class including a cash fund of $350 million and an increased security spend of $150 million. This was the second largest data breach settlement ever behind only *Equifax* (a case where Mr. Pizzirusso also served in leadership with Ms. Keller).

Courts have also appointed Mr. Pizzirusso to leadership in numerous other data breach cases, many of which he has successfully resolved, including: *In re: Marriott International Inc., Customer Data Security Breach Litig.*, MDL No. 19-md-2879 (D. Md.) (Co-Lead) (class certified, currently pending); *In re American Medical Collection Agency, Inc. Customer Data Security Breach Litig.*, No. 19-md-2904 (D.N.J.) (Steering Committee) (currently pending); *In re Equifax, Inc. Customer Data Security Breach Litig.*, 1:17-

---

[17] https://images.law.com/media/nationallawjournal/supplements/NLJTB_CYBER_2017/mobile/index.html (at p. 52)

md-2800-TWT (N.D. Ga.) (Plaintiffs' Steering Committee and Settlement Committee) ($500 million settlement to consumers with $1 billion in upgraded data security); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-md-2633-SI (D. Or.) (Executive Leadership Committee) ($74 million settlement); *In re: Arby's Rest. Group, Inc. Data Security Litig.*, Civil No. 1:17-cv-514-AT (N.D. Ga.) (Co-Lead) (~$5 million settlement); *In re Target Corporation Customer Data Security Breach Litig.*, MDL No. 14-25522 (D. Minn.) (Steering Committee on behalf of financial institutions, nationwide class certification granted, $60 million settlement approved); *Greater Chautauqua Federal Credit Union v. Kmart Corp.*, No. 1:15-cv-02228 (N.D. Ill.) (One of three Co-Leads) (~$18.5 million settlement); *First Choice Federal Credit Union v. Wendy's*, Case No. 2:16-cv-00506 (W.D. Pa.) (Plaintiffs' Executive Committee) ($50 million settlement); *In re The Home Depot, Inc. Customer Data Security Breach Litig.*, No. 14-md-02583 (N.D. Ga.) (Chair of the Plaintiffs' Steering Committee) (~$35 million settlement). Aside from data breach cases, courts have also entrusted Mr. Pizzirusso with leadership positions in dozens of other types of matters. A copy of Mr. Pizzirusso's resume is attached as Ex. C.

### C.  The Court Should Appoint a Small Executive Committee.

To the extent permitted by the Court, the Haber Group intends to "provide work for the common benefit of the cases to other attorneys who are qualified and available to perform the work, unless doing so would create inefficiencies in the prosecution of the claims." Duke Guidelines at 48 (Best Practice 4H). If selected and authorized, the Haber Group would actively seek to draw from the larger talent pool as appropriate, while avoiding duplication of effort and maximizing efficiencies. The Haber Group takes seriously their obligation "to act fairly, efficiently, and economically in the interests of all parties and parties' counsel." Federal Judicial Center, Manual of Complex Litigation § 10.22 (4th Ed. 2004). In accordance with the Manual for Complex Litigation, the Haber Group proposes that the Court approve a small Executive Committee ("EC") to advise Co-Lead Counsel and perform non-duplicative work consistent with their expertise and talents. *Id.* § 10.221. The Group proposes that this committee include: (1) Ms. Schubert of Schubert Jonckheer & Kolbe; and (2) Ms. Soneji of Tycko

& Zaveeei. Although the Haber Group believes it has the required experience, knowledge, and resources to successfully handle the litigation, the Haber Group is amenable to other applicants being appointed to the EC, to the extent the Court believes that they can help the leadership in this case.

### 1. Amber L. Schubert of Schubert Jonckheer & Kolbe

Amber L. Schubert is a partner at Schubert Jonckheer & Kolbe, which has represented plaintiffs in class actions for over forty years, specializing in complex litigation. Ms. Schubert has more than eleven years of class action experience, focusing on consumer protection cases. She received her undergraduate degree from U.C. Berkeley in 2003 and her law degree *cum laude* from the University of San Francisco in 2011, where she served as Editor-in-Chief of the USF Law Review. She is also an active member of the LGBTQ community.

Ms. Schubert has personally served as lead counsel in numerous complex class actions, including *Nalick v. Seagate Tech.*, No. CGC-15-547787 (Super. Ct. S.F.); *Fisher v. U.S.*, No. 1:15-cv-01575 (Fed. Cl.); and *Knowles v. ARRIS Int'l PLC*, No. 5:17-cv-01834-LHK (N.D. Cal.). In *Seagate*, Ms. Schubert served as Class Counsel in a case involving defective consumer hard disk drives. She successfully briefed and argued an appeal reversing summary adjudication, and she is currently litigating a second appeal concerning class certification. In *Arris*, Ms. Schubert served as Class Counsel in a case involving defective cable modems and briefed and won a motion to certify the class. And in *Fisher*, she was primary counsel for a putative class of PACER users alleging the Administrative Office of the U.S. Courts overcharged users for accessing court dockets. Ms. Schubert successfully defeated both the Government's motion to dismiss and its motion for summary judgment.

Moreover, the Schubert Firm has specialized in complex litigation for decades and has a strong track record. For example, in *Google*, a class action alleging that Google placed advertisers' ads on low-quality junk websites, the Schubert Firm successfully won an appeal reversing the denial of class certification in the Ninth Circuit—making important new law on damages—a decision that has been cited over 200 times. *Pulaski & Middleman v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015). The Schubert

Firm ultimately obtained a $22.5 million settlement. And in *In re MacBook Keyb. Litig.*, No. 5:18-cv-02813 (N.D. Cal.), a class action involving defective laptop keyboards, Ms. Schubert represents the Schubert firm on the Executive Committee, where she played a major role in fact and expert discovery. *MacBook* settled for a $50 million common fund, with the final approval pending later this month.

Ms. Schubert and the Schubert Firm also have experience litigating consumer privacy and data breach class actions and have worked well as part of a team. For example, in *In Re Anthem, Inc. Data Breach Litig.*, No. 5:15-md-02617 (N.D. Cal.), a data breach class action involving 78.8 million stolen personal health records, although the Schubert Firm did not have a formal appointment, Ms. Schubert and the Schubert Firm played a leading role in the discovery process, helping to manage the document review team, working with discovery vendors to design the review, and drafting important memos on complex technical topics related to the breach. The Schubert Firm also played a similar role in *Fero v. Excellus Health Plan, Inc.*, No. 6:15-cv-06569 (W.D.N.Y.), a data breach class action involving the personal health and financial information of 10.5 million health-insurance subscribers.

Ms. Schubert's experience and track record in litigating and resolving complex class actions, her passion for consumer rights, her personal commitment to improving the justice system, and her diverse background support her appointment. A copy of the Schubert firm's resume, which includes additional information about Ms. Schubert and the firm's attorneys and results, is attached as Ex. D.

### 2.  Sabita J. Soneji of Tycko & Zavereei

Sabita Soneji is a partner in the California office of Tycko & Zavareei LLP, where she focuses her practice on complex consumer protection and *qui tam* litigation and serves as the Chair of the firm's Privacy and Data Breach Group. She is a seasoned litigator with over twenty years of experience.

Ms. Soneji has successfully led complex class actions and multidistrict litigation, including on behalf of consumer privacy and security. She serves on the Executive Committee in *In re T-Mobile Customer Data Security Breach Litigation*, No. 4:21-MD-03019-BCW (W.D. Mo.), which involved claims resulting from one of the largest data breaches in history that compromised the personal data of tens

of millions of consumers, and in which Ms. Soneji helped secure a historic settlement of $500 million including a cash fund of $350 million that was preliminarily approved in August 2022. Last month, as co-lead counsel, she filed for preliminary approval of a $37.5 million Common Fund against Meta Platforms, Inc. for tracking users' location without their consent. *Lundy v. Meta Platforms, Inc.*, No. 3:18-cv-6793 (N.D. Cal.). In 2021, she was appointed co-lead counsel in *Lewis, et al. v. Idaho Central Credit Union*, No. CV01-20-03733 (Idaho 4th Dist. Ct., Ada Cnty.), a data breach class action in which she secured a $1.55 million common fund that resulted in hundreds of dollars awarded to each participating settlement class member. Ms. Soneji has also been deeply involved in other data privacy MDLs, including *In re Capital One Consumer Data Security Breach Litigation*, No. 1:19-md-2915 (E.D. Va.), in which she represented one of the lead plaintiffs and which resulted in a $190 million settlement that received final approval in September 2022.

Outside these areas, Ms. Soneji was appointed to the Plaintiffs' Steering Committee in *In re Juul Labs Inc., Marketing, Sales Practices, and Products Liability Litigation*, No. 19-md-02913-WHO (N.D. Cal.), multidistrict litigation in which she developed and defended all RICO claims against a complicated web of corporate and individual defendants and serves on the law and briefing and trial committees as bellwether trials begin. She helped the class secure a $255 million settlement with Defendant JLI and is preparing for trial against Altria.

Ms. Soneji's firm, Tycko & Zavareei LLP, has extensive experience leading complex class actions and MDLs like this one, and she will draw upon their support and expertise if appointed in this case. For example, her colleague, Hassan Zavareei, serves as interim co-lead counsel in *In re Luxottica of America, Inc. Data Security Breach Litigation*, No. 1:20-cv-00908 (S.D. Oh.) and *In re US Fertility, LLC Data Security Litigation*, No. 8:21-cv-299 (D. Md.), ongoing consolidated class actions involving major corporate data breaches.

Before joining the plaintiffs' bar, Ms. Soneji served for many years as a senior counsel in the United States Department of Justice, where she led and managed complex consumer financial fraud

cases, including developing innovative legal theories and forging creative resolutions. As a first generation Indian American, Ms. Soneji would bring diversity to the leadership team. That commitment to diversity is shared by her firm. Indeed, in recognition of Tycko & Zavareei LLP's leadership in diversity in the legal profession, the firm received the 2022 Diversity Initiative Award from *The National Law Journal*'s Elite Trial Lawyers recognition program. A copy of Ms. Soneji's firm's resume, which includes additional information about Ms. Soneji and her firm, is attached as Ex. E.

### D. The Haber Group Has the Resources to Prosecute This Case Effectively.

The Haber Group has ample resources to prosecute this litigation, from discovery through motion practice, trial, and appeals. *See* Duke Guidelines at 39 (Best Practice 3C(iii): stating in part that applicants should "provide information about the resources they have available to contribute to the litigation"). Importantly, as with experience, the Haber Group's resources far eclipse those of any of the other firms who are seeking leadership in this litigation.

Hausfeld, which is widely acknowledged as one of the preeminent and most successful class action law firms in the world, has over 170 lawyers in twelve offices (including seven in Europe). (*See* Ex. C). Hausfeld alone has more attorneys than the other expected applicants combined. They are fully prepared to go head-to-head against any well-funded defendant or defense firm. According to the *Global Competition Review*, Hausfeld "is clearly recognized as one of the best plaintiffs' firms in the country." Hausfeld has recovered over ***$20 billion*** for its clients in trials and settlements and courts have appointed the firm's attorneys to leadership positions in hundreds of cutting-edge class actions. Given its size, number of attorneys, and financial resources, Hausfeld is fully equipped to take this case to trial and through years of appeals if necessary.

In addition, DiCello Levitt has offices in Birmingham, Chicago, Cleveland, Detroit, New York, St. Louis, and Washington, D.C., and has recovered billions of dollars for its clients. DiCello Levitt is well-resourced and able to handle this litigation. Over the past year, DiCello Levitt has doubled in size and hired some of the best talent related to cybersecurity matters. In addition to Ms. Keller, DiCello

Levitt can call on its Privacy, Technology, and Cybersecurity practice group, which includes (but is not limited to) Sharon Cruz (a former cybercrime prosecutor and Assistant Attorney General for the State of Illinois), James Ulwick (a former insurance defense attorney who understands how to dissect complicated cyber-insurance policies), and David Straite (a DiCello Levitt partner and well-respected veteran of the privacy bar, who has created precedent concerning the value of personal information).[18] DiCello Levitt's Privacy, Technology, and Cybersecurity practice group has been recognized by Law360 three years in a row as one of the five best data breach and cybersecurity practice groups in the country. Given its expertise, experience, and resources, DiCello Levitt is prepared to move this case to a successful resolution, whether through mediation, litigation, and trial, or appeals, if necessary.

Finally, Shapiro Haber is a boutique Boston-based law firm with a reputation for zealous advocacy in complex class action litigation. It is highly selective in the cases it litigates, and it purposely is active on a relatively small number of cases so that it can devote the necessary time and resources to litigate each class action to fruition. Shapiro Haber has the resolve to litigate each case from its inception to its conclusion, as is evidenced by its handling of the Marlboro Lights cigarettes class action against Philip Morris, which was commenced in 1998 and concluded in 2017, with two successful interlocutory appeals to the Massachusetts Supreme Judicial Court, a successful appeal to the United States Supreme Court in a related action, and a successful five-week trial. Because of the skill and tenacity of its lawyers, and its dedication of the required resources, Shapiro Haber succeeded against a deep-pocketed opponent with a reputation for rarely settling cases. Shapiro Haber will bring that zeal and energy to pursuing this litigation as well.

---

[18] *See* Ben Kochman, Cybersecurity Group of the Year: DiCello Levitt, Law360 (Jan. 31, 2022), https://www.law360.com/cybersecurity-privacy/articles/1453601/cybersecurity-group-of-the-year-dicello-levitt (attached as Exhibit C).

**E.  Other Factors, Including Diversity, Support the Appointment of the Haber Group.**

In addition to their extensive skills and experience, the Haber Group reflects the diversity of the bar and the putative nationwide class. *See* Duke Guidelines at 38 (Best Practice 3C) (noting that leadership appointments should "responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds"); James F. Humphreys Complex Litig. Ctr., George Wash. Law Sch., *Inclusivity and Excellence: Guidelines and Best Practices for Judges Appointing Lawyers to Leadership Positions in MDL and Class-Action Litigation* (Mar. 15, 2021) (observing that "diversity enhances the quality of the decision-making process and results" in class actions).[19]

The Haber Group includes attorneys of diverse ages, genders, experiences, and geographic locations. For example, Ms. Keller is the youngest woman ever appointed to lead a nationwide class action (in which she helped secure the largest data breach settlement in history), while Mr. Haber has practiced law for over fifty years, with a wealth of knowledge and experience in Massachusetts class-action law. The proposed leadership team also brings together a coalition of class-action attorneys from across the country, with counsel from Massachusetts, Illinois, California, and the District of Columbia, reflecting the geographic diversity of the plaintiffs' bar. The Haber Group is proud that, of the five attorneys it proposes for leadership positions in this litigation, more than half are women (with one a person of color and one a member of the LGBTQ community). This commitment to diversity "enhance[s] the quality of representation and improve[s] the decision-making process, while demonstrating to the parties and the public that discrimination, bias, and exclusion have no place in the federal judicial system." *Id.* at 11.

---

[19] Diversity has been a long-standing problem in class-action leadership appointments. According to an ABA survey, 71% of class actions had no women as lead counsel, and in multidistrict cases, men were three times more likely than women to be appointed lead counsel. *Id.* at 3. In fact, the Bureau of National Affairs reported in 2017 that women made up just 16.5% of all plaintiffs' leadership appointments in MDL cases. *Id.* And "[p]eople of color, disabled individuals, and LGBTQ lawyers are equally, if not more, underrepresented in these leadership positions." *Id.* at iii.2.

Finally, the Haber Group has significant experience monitoring billing, controlling costs, and avoiding duplication of effort in assigning and undertaking case-related work. Mindful of best practices in complex cases like this one, the Haber Group understands the importance of efficient, effective litigation and of keeping the Court informed in the manner best suited to this Court's needs. Attached as Exhibit F is a proposed Time Management and Billing Protocol. Should the Court desire, co-lead counsel is prepared to submit *in camera* summaries of time records to the Court on a quarterly basis.

## IV.    CONCLUSION

The Haber Group combines the experience, talents, and resources of one of the leading class action attorneys in Massachusetts with two of the leading data breach attorneys in the United States. In light of the extensive experience of the Haber Group's attorneys in prosecuting class actions—and in particular data breach class actions—and the resources they can and will devote to the effective litigation of this case on behalf of the class, the Court should appoint the Haber Group (Mr. Haber, Ms. Keller, and Mr. Pizzirusso) as interim Co-Lead Counsel for these consolidated actions. The Court should also appoint a two-member Executive Committee (Ms. Schubert and Ms. Soneji), as well any other attorneys it deems appropriate.

Dated: March 6, 2023                                    Respectfully submitted by,

*/s/ Edward F. Haber*
Edward F. Haber (BBO# 215620)
Michelle Blauner (BBO# 549049)
Patrick J. Vallely (BBO# 663866)
**Shapiro Haber & Urmy LLP**
One Boston Place, Suite 2600
Boston, MA 02108
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

*Counsel for Plaintiffs Andrew and Linthicum*

/s/ Amber L. Schubert
Robert C. Schubert (*pro hac vice*)
Amber L. Schubert (*pro hac vice*)
**Schubert Jonckheer & Kolbe LLP**
2001 Union Street, Suite 200
San Francisco, California 94123
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
rschubert@sjk.law
aschubert@sjk.law

*Counsel for Plaintiff Andrew*

/s/ Amy Keller
Amy Keller
James A. Ulwick
**DiCello Levitt**
Ten North Dearborn Street, 6th Floor
Chicago, IL 60602
Tel: (312) 214-7900
Fax: (312) 253-1443
akeller@dicellolevitt.com
julwick@dicellolevitt.com

*Counsel for Plaintiff Goldstein*

/s/ James Pizzirusso
James Pizzirusso (*pro hac vice*)
**Hausfeld LLP**
888 16th St. NW Suite 300
Washington, DC 20006
202.540.7200
jpizzirusso@hausfeld.com

*Counsel for Plaintiff Goldstein*

/s/ Sabita J. Soneji
Sabita J. Soneji
Cort T. Carlson
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
ssoneji@tzlegal.com
ccarlson@tzlegal.com

*Counsel for Plaintiff Linthicum*

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was filed electronically through the Court's electronic filing system and that notice of this filing will be sent to all counsel of record in this matter by operation of the Court's ECF system.

Dated: March 6, 2023                    */s/ Edward F. Haber*
                                        Edward F. Haber